Mr. Kriegman, whenever you're ready. Thank you. May it please the Court. The fundamental issue in this case, which I believe is a case of first impression, is whether an individual who has decided to challenge his termination under the FLRA through the grievance arbitration process enjoys the same rights as any other federal employee in terms of acquiring information for the claims and defenses that he has. In this case, the petitioner exercised his right to challenge his term termination through the grievance process. The matter went through the various stages of the grievance process. Mr. Kriegman? Yes. Counselor, one of your complaints, one of the problems that you have is that the arbitrator did not allow discovery. That is correct. But the arbitration, the rules are set by the master agreement. There's these various laws and rules and regulations that apply to arbitrations, which you cite in your brief. But none of them require discovery. There is no language in the master agreement which specifically addresses discovery. That is not tantamount to stating that an individual... Okay, so now we have that. Put that aside. What other legal authority do you have to cite to us that mandates or makes discovery compulsory in this type of an arbitration? It would be a deprivation of fundamental due process. If an individual... One should not engage in forum shopping in order to choose the best avenue in which to challenge an action that has been taken against him. There is uniformity in federal law. And the court in Cornelius v. Nutt, I believe, stated that the arbitration process should be no different in terms of the substantive rights that an individual enjoys from the statutory process. In this case, the agency held all the cards. The agency was in possession of all of the information. The grievant in this case had nothing. And he had significant claims and defenses in this case. Wait. Go ahead. Go ahead. Mr. Freeman. Did you seek information about any other comparators other than the two that were discussed? No. No, I didn't. Of course, I didn't have an opportunity to. The agency filed a motion in the limine, which the arbitrator granted. In relation to one of them. There were two comparators that the grievant identified specifically. But the agency's position, which was upheld by the arbitrator, was that there was no opportunity to engage in any discovery whatsoever. You wanted to go into the personnel files of the individual in question. What I'm asking you is, were there any other comparators available? Did, for example, the union identify any? The two that you have, to me, look pretty far afield. The most relevant comparator was the highest law enforcement officer in the Federal Protective Service, in Region 6, who had been given by a... You're not going to answer my question. Is that right? My understanding is that the comparator was directly relevant for the reasons that the individuals who were involved in evaluating and assessing... Let me ask you a question, so we can get back on point. Were there any other than the two about which you wish to speak? Were there any other comparators that were in the same position he was in? Somebody who made a misstatement of fact and was terminated before full stop? The union did not seek any information other than the two individuals who they believed were comparators for the reason that the individuals who were involved in the termination of the grievance in this case were the same individuals who were involved in effectuating a two- or three-day suspension by an individual who had given perjured testimony during... There was a point where we had requested, initially, information. The agency indicated that it was not supplying any information whatsoever relating to those individuals, and the assumption that the union had was that the agency was stating that it would not supply any information because it didn't believe it had an obligation to supply any information in any area. So that question was never asked, is what you're telling me. That specific question was never asked because of the response the agency gave that it was to any discovery request. What is it you were trying to discover? You have this information in the record with regard to what happened to these two employees. You made your argument as to why that's relevant to your case, and the other side said no, there's no relationship between his charges against your client for firearms problems and lack of candor, and what happened in the other cases. What else were you seeking that could have changed the outcome or really had an appreciable effect on what the conclusions drawn here by the arbitrator were? Well, what changed the outcome was that the arbitrator, under threat of closing the hearing, refused my efforts to question the individuals who were involved in the disciplining of Oblinger to show that these individuals were intimately involved and had control over the disciplining of another individual who had lied under oath, under penalty of perjury, and who had not been charged with lack of candor and who had been charged with the offense of conduct unbecoming in order to show that the government had different criteria in terms of assessing whether certain conduct should fall within a specific charge or not, and also in the consistency of the penalty that had been imposed. But all of that information was out there, right? You used that. You made your argument. The other side made its argument, and the arbitrator drew his conclusions with regard to the differences and distinctions between your case and the charges in your case and the charges in the other case, right? My understanding was that the arbitrator did not permit me to explore anything. I was not permitted to even question witnesses on those aspects, and the key witnesses were Mr. Patterson and Mr. Klein. These were- To build on Judge Proh's questions, Mr. Olson's case involved a procurement fraud. Mr. Oblinger's case involved the theft of a sophisticated assault automatic weapon. I mean, doesn't that matter in this situation? The events are different, but the circumstances are dead on. The grieving in this case had his weapon stolen from his vehicle. He initially, when he reported it, had indicated that he had put the- We've read the record. Okay. In the Olson case, and then the grievant immediately recognized that his statement was inaccurate, and he gave a written statement that day, and he gave a written statement two weeks later in which he was fully forthcoming. The regional director gave false statements under penalty of perjury during official investigations, and he continued to make the false statements. He had indicated that he had no knowledge. He had no relationship with the individual who had eventually been awarded a substantial contract. He also gave a statement which was clearly false, that the successful bidder who was his friend did not prepare the statement of work. These were blatantly false, and he was charged with conduct unbecoming. He was not given a proposed removal action, and ultimately, he received a two-day suspension. So in terms of the actual lack of candor issue, one has to look at the specific actions. And what's equally important is how can someone develop a case in arbitration when that individual is prevented from obtaining information relating to his defenses? If the arbitration process abridges someone's rights as contrasted with an appeal to the arbitration board, there is a fundamental unfairness because an agency is only obligated to give information in order to support its position. It's not obligated to present exculpatory information, and when witnesses are questioned, witnesses have memories of convenience, witnesses' memories fade, witnesses perhaps can give inaccurate testimony, and it's only through the agency's actual evidence, the email histories, that one can get to the truth. And if one can't get through the truth in an arbitration process by getting the fundamental information, which is in possession and control of the agency, not the grievant, then the grievant has been deprived of his fundamental right. It would be like having a congressional hearing where there are emails that should be produced and are not produced. How do you deal with Wiseman v. Social Security Administration? I'm sorry? How do you deal with Wiseman and our holding there? I'm sorry. Could you direct me to... Do you want me to quote it for you? The only procedures an arbitrator must follow are those specified in the collective bargaining agreement in the submission of the parties to the arbitrator or required by statute. And there are fundamental due process principles, and if one were to look at the collective bargaining agreement, and I believe I cited this in my brief, that both parties are required to adhere to the law of legal principles. J.A. 20, the union's motion to produce documents, conceded that the master agreement doesn't address the issue of information request. I would submit that there is no fairness in an arbitration process dealing with the deprivation of due process. If that's the case, why did you elect to arbitrate? I have never experienced having an arbitration hearing where an arbitrator has denied the union information. This is the first time. If existing legal authority is that you're bound in arbitration by the master agreement, and you choose to arbitrate, don't you look at the master agreement to see what you're gaining or what you've given up, or would it be better to pursue your remedy in the courts? Absolutely. There's no conflict. This looks like a situation where your client's raised by his own petard. If it's the court's interpretation that a master agreement, which is silent on the discovery issue, is actually something that says that an arbitrator can deny an individual access to information on his defenses and his claims, yes, that is correct, but there's nothing in the master agreement that addresses the discovery process. Were the two comparators that you see charged with the same misconduct? They were not, which is a significant argument that we raised. If someone commits an egregious act and the agency decides to treat that person differently by labeling that act in something which is minor, that is something that would show a disparity in treatment. There's a prior authority that says the charges have to be substantially similar in order to establish disparate penalties, right? My understanding of the law is that the court looks at the specific conduct of the individuals and not the labels that the agencies place on the conduct. You've exceeded your time. We'll restore two minutes of rebuttal. Let's hear from the government. May it please the court. Were there any other comparators available? There were other comparators available, Your Honor. The agency relied on other comparators. The union did not ask for other comparators or even what comparators the agency had relied upon. The Article 3 of the Collective Bargaining Agreement gives the right to information necessary for the representation of employees pursuing grievances. That is the avenue for getting information. Well, it's pretty broad, right? That's correct, Your Honor. It's broad and it will apply to any information that the grievance needs in pursuing his or her grievance. So is that what happened here? I mean, the arbitrator didn't blanketly say you're getting no information. He just evaluated the request for information based on what he determined was the need? Well, the union pursued this avenue and was denied by the—and pursued it specifically on information about Olson and Matthews. Again, the union did not ask about other comparators. And the agency said that that information is not relevant. It's not necessary for the—pursuing this grievance in the Uplanger case. You said the agency. You mean the arbitrator? The agency. Well, the arbitrator decided that since this is going under the grievance Article 3, that he did not have the authority to look at that. That this would have to be another grievance. That he didn't have the authority to look at it? At what? He didn't have the authority to grant discovery because there's no discovery under the collective bargaining agreement. There's no prohibition against it? There's no prohibition. He could have. He's not prohibited from allowing discovery. I mean, there's no rules that allow it. So he's not prohibited from— Well, there are two motions pending, Your Honor. One, a motion in Lemonade to exclude the evidence of Olson and Matthews. And one, a motion to quash the subpoenas for information. And the arbitrator granted both. And so the arbitrator decided that both the evidence was not relevant and that he did not have the authority to grant the subpoenas. How do you know it's not relevant evidence if the evidence hasn't been taken? Well, there's a lot of evidence in the public record. There's evidence in the JA. That evidence was before the arbitrator at that time. There's enough evidence in the public record to understand the conduct and, of course, the charges, most importantly, that were brought against Mr. Olson. And no charges were actually brought against Mr. Matthews. There seems to be a fundamental unfairness in the arbitrator looking at evidence on the record and deciding on its own, this is enough, and not allowing someone who has chosen to take arbitration, the arbitration route, to present the evidence that they feel is relevant to their case. Shouldn't the arbitrator, I mean, really be weighing both sides? Why is it just a one-sided weighing? Well, I think the issue here, Your Honor, is that this evidence is so outside of the relevancy of the grievance Mr. Oeflinger is bringing that, I mean, it could make the arbitration go on for an indefinite period to allow the mini-trials of other grievances, to allow this type of clearly non-relevant evidence. And I want to remind the Court of the context here. The comparator evidence is brought in to raise issues about the Douglas factor, about the consistency of the penalty imposed for the same or similar offenses. So if we're not talking about evidence about someone who's charged of the same or similar offenses, we're not talking about this Douglas factor. It's not relevant. So what if this has anything to do with this legal proposition about what the authority of the arbitrator is? If your argument is that this evidence would never have been put on in any forum, because no judge would have allowed it, because it had no relevance, there was no probative value in terms of the charges, right? That's correct, Your Honor. This case, it is, I mean, it's not close, if you will. It would have been the same result under the board. We're not, we're not, we're talking about a procedural matter. So what is the actual difference, though? I mean, what the arbitrator, what you perceive as being, what the government perceives as being the authority that the arbitrator has in connection with an arbitration proceeding, and what an MSPB AJ would have, for example? Well, the MSPB, under the regulations, has discovery, as the Court is well aware. The arbitration is pursuant to the arbitration agreement, or the master agreement, and there's no mechanism in there for discovery. There is a mechanism for information requests under Article 3, which is where the grievance can get information. So there is, it's not that the agency is withholding information, it's a question of how that information is produced. But under either of those schemes, there's no basis for saying non-relevant information should come in. Information about grievances where the same or similar charge wasn't made. And penalty. I'm sorry, Your Honor? And penalty. And penalty, correct. Because the idea of this Douglas factor is... And the reason I say that is Matthew's resigned. Correct, Your Honor. There was no charge there, and no penalty. And the question at issue is whether the penalties are consistent. And that's what the Douglas factor that's invoked with this sort of evidence is looking at. Whether the penalties are consistent. So different charges, different underlying conduct. I mean, I would go so far as to say the fact that it was a different unit. That there was a different deciding official, a different time period. All of these things show that in this case, these two weren't comparators, and it's not relevant evidence under any discovery or information seeking scheme. The fourth argument the petitioner asserts is that the agency ignored the findings of an Internal Affairs Division memo. In which the union says that the candor charge against Opplinger was ruled as being unsubstantiated. But when you look at that document, there were two lack of candor charges. And one was found to be substantiated, the other wasn't. And of course, it's the substantiated one that led to the charge. In passing in that memo, the report suggests that this may have been caused by stress of the situation. That the inaccurate statement may have been caused by stress of the situation. But the agency just looked at the multiple versions of the story. We're not talking about just two stories. The story changed over time. There were multiple versions and different explanations on what Mr. Opplinger was doing that morning. And the fact that it took him so long to come out with his correct... Well, it didn't take him that long. Well, his full correct story didn't come out until three weeks after the fact. And that afternoon, he admitted that he left the gun in the car overnight. But he had other statements. The M4 assault rifle. And there were other details that he would give in different versions of the story about leaving the gun in the car, but coming in for coffee. Or at what time did he wake up? There were details about whether he cleaned the gun. We read the record. Yes, a rifle. Yes, thank you. And all these variations led the agency to conclude, and a reasonable person could conclude, that it wasn't the shock of the situation. He wasn't relying on his routine. If he was relying on his routine, it would have gone from one story to the truth in an instant. Once he cleared his mind. But the fact he had so many varying explanations and stories could lead any reasonable person to believe, and led the agency to believe, that it wasn't the shock. It was his attempts to conceal the truth. And so the lack of candor charge is supported by substantial evidence. Let me make a Giglio argument that he wouldn't be able to testify. There's a substantial difference between the lack of candor in Giglio and the lack of candor here. Does it matter? Well, as I recall, that was a case about stealing refrigerators. It's been a while. Any evidence of not being forthright with the truth could be used as impeachment evidence. It appears that it is Giglio and material that would have to be disclosed. I don't disagree with you about that. And also, the agency is entitled to hold its law enforcement officers up to the highest standards as far as being forthright and being honest, even in stressful situations, which they're trained to deal with. We ask the court to, unless there are further questions, we ask the court to affirm the ruling of the arbitrator. Thank you. Thank you. We've restored two minutes of rebuttal if you need it. There were a few fundamental issues that I wanted to address. We were denied the opportunity to question the individuals who were involved in the Olson matter. That is a significant issue in this case. There should never have been a motion in limine. Everyone is conjecturing as to what the deliberative process was, what kind of evidence these individuals had in their possession, how they evaluated that evidence in order to determine whether there was a consistency in the way that they determined what type of charge should have been imposed on individuals, and whether there was a consistency in the imposition of penalty. It is fundamentally unfair to deny in the arbitration process, and there is no language in the arbitration process which permits the preclusion of avenues to explore. We were denied the opportunity to even question the prime decision makers as to the Olson situation. We were even denied the investigative report that had been generated in the Olson matter to show that there were probably multiple untruthful statements that were known by the individuals who had decided that Olson should not have been charged with lack of candor. So that is one fundamental issue. Another fundamental issue was that the arbitrator didn't make a Douglas Factor penalty assessment. He did not go through the Douglas Factors. If one were to go through the Douglas Factors in terms of whether the offense was malicious, was it intentional, was it done for gain, what his past record was, he had a number of— He may not have gone through all, but he did address the Douglas Factors. Correct? He addressed the nature of citizens of the offense, past disciplinary record, work record and length of service, consistency of the penalty, mitigating circumstances. I respectfully disagree with that. If one were to look at his opinion and look at the 12 Douglas criteria, there was no discussion as to whether the penalty was consistent with the penalty imposed upon others. There was no discussion about his past work record. There was no discussion about the notoriety. And taking that factor, Olson's notoriety was nationwide. Everyone knew. It was in the papers. No one knew about the fact that Opplinger had initially gave misinformation. Okay, thank you. We thank both parties and the cases submitted. The next case for argument is 16-1280, In Re Virus.